812 So.2d 1144 (2002)
Tasha Mercedez SHELBY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2000-KA-01763-COA.
Court of Appeals of Mississippi.
March 26, 2002.
*1145 Donald A. Smith, Gulfport, attorney for appellant.
Office of the Attorney General by Charles W. Maris, Jr., attorneys for appellee.
Before KING, P.J., THOMAS, and MYERS, JJ.
MYERS, J., for the court.
¶ 1. This is an appeal of a conviction of capital murder in the Circuit Court of Harrison County, Honorable Robert H. Walker presiding. Tasha Mercedez Shelby was sentenced to a term of life in the custody of the Mississippi Department of Corrections. Shelby now appeals her conviction stating that the court erred when it denied her motion for directed verdict or a new trial, spoke to the jury in the jury room without counsel present and replaced one of the jurors with an alternate. She also claims there was insufficient evidence to find her guilty of capital murder.

FACTS
¶ 2. Bryan Thomson, III's three-year-old son died on May 31, 1997, from blunt force trauma to the head. The toddler was alone with his father's girlfriend, Shelby, from approximately 9:00 p.m. on the evening of May 29 until 4:00 a.m. May 30. Thompson received a call from Shelby at work, between three and four o'clock, stating that the child had fallen from his bed and was limp and not moving. Thompson and Shelby took the child to Biloxi Regional Hospital where treatment was undertaken by Dr. Odom. The child's injuries were of such an extreme nature that he was sent to the University of South Alabama for further treatment where he later died.

DISCUSSION
¶ 3. Shelby's first assignment of error regarding the sufficiency of the evidence can be evaluated alongside the question of whether her motions for new trial and directed verdict were incorrectly denied. Shelby states that the evidence in this case was strictly circumstantial. She asserts that "insufficient evidence exists from which reasonable jurors could have found" her guilty. Shelby argues that her motion for judgment notwithstanding the verdict was erroneously denied even though it is not specifically alleged in her brief. She also asserts that the trial court erred when it denied her remaining post trial motions.
*1146 ¶ 4. For review of a judgment notwithstanding the verdict or in the alternative a new trial, our procedure is well settled. The review of a denial of a new trial motion goes to the weight of the evidence. The standard for a JNOV is not whether the verdict was against the overwhelming weight of the evidence but whether the evidence was sufficient to warrant the guilty verdict and whether fair-minded jurors could have arrived at the same verdict. White v. State, 761 So.2d 221, 224(¶ 10) (Miss.Ct.App.2000). In discerning whether the jury verdict is against the weight of the evidence, we must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Crawford v. State, 754 So.2d 1211, 1222 (¶ 30) (Miss.2000), citing Collier v. State, 711 So.2d 458, 461 (Miss.1998). In order to mandate a new trial, the verdict must be "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction `unconscionable injustice.'" Crawford, 754 So.2d at 1222(¶ 30), citing Groseclose v. State, 440 So.2d 297, 300 (Miss.1983).
¶ 5. If a claim of unconscionable injustice is raised then "[i]n reviewing this claim, this Court must accept as true the evidence favorable to the State." Wetz v. State, 503 So.2d 803, 812 (Miss.1987). "Direct evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." Campbell v. State, 798 So.2d 524, 528(¶ 12) (Miss.2001). "Circumstantial evidence need not exclude every possible doubt, but only every other reasonable hypothesis of innocence." Id. at 529(¶ 13).
¶ 6. The jury weighs the credibility of each witness when considering conflicting testimony. Turner v. State, 726 So.2d 117, 125(¶ 29) (Miss.1998); see also Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979)(holding that the question of witness credibility is one to be resolved by the jury). The doctors' conclusions were the major conflicts in testimony. Shelby said she did not harm the child and even her own expert said the child may have died from shaken baby syndrome.[1] However, not even he would rule out the death by blunt force trauma finding by the State's doctors.
¶ 7. The evidence presented by the State was substantial. Shelby was alone with the child from 9 p.m. until 4 a.m. Shelby called Thompson between three and four to tell him about his child. Upon their arrival at the emergency room, the child had no pulse, was not breathing and was blue and lifeless. Two doctors, Dr. Odom from the emergency room and the forensic pathologist, testified that the child died from blunt force trauma to his head. Both doctors also testified that the child's injuries were inflicted anywhere from three hours to thirty minutes before his arrival at the hospital. Others who witnessed the child's behavior the evening before his death testified that the child was well and exhibited no signs of trouble while in their presence.
¶ 8. It appears that the jury considered the evidence and gave more weight to the State's argument over Shelby's defense. That is the jury's job. There has been no unconscionable injustice alleged nor shown as well as no error committed by the court.
¶ 9. At the close of court on the first evening of trial, the judge went into *1147 the jury room without the attendance of either counsel but in the presence of the bailiff. The next morning Shelby objected to the court taking that action and moved for mistrial. The court stated, on the record, that its sole reason for speaking with the jury was to inform it about the procedures involved in being sequestered. The court then recounted the details of the conversation for the record. Judges must be careful when speaking to a jury during a trial, "because of the attributes of the offices they hold, unconsciously exert tremendous influence in the trial of a case, and they should be astutely careful so that unintentionally the jurors are not improperly influenced by their words and actions." Simmons v. State, 746 So.2d 302, 307(¶ 22) (Miss.1999) (quoting Roberson v. State, 185 So.2d 667, 670 (Miss.1966)).
¶ 10. In an appeal it is the responsibility of the appellant to demonstrate the reversible error committed by the court. Shelby has shown no error committed by the judge's action. However, we strongly recommend that this situation not occur in the future. The judge can discuss lodging issues, and anything else, with the jury in open court. There is no need to do so outside the courtroom.
¶ 11. As her last issue on appeal, Shelby questions the dismissal of one of the jurors. The morning the trial was set to begin, juror number eight was brought into court without the other jurors as she had something to tell the court. Her concern was that after a sleepless night of introspective thought she realized that she would not be able to consider the death penalty should it come to that. A trial court judge has sound discretion in dismissing a juror for good cause and replacing him/her with an alternate. Brown v. State, 763 So.2d 189, 194(¶ 12) (Miss.Ct. App.2000). When faced with the realization and admission by the juror, the court was forced to release her from duty as she would not follow the law that, on the prior day, she had sworn to uphold. This claim has no merit.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT ELIGIBILITY FOR PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] Part of Shelby's defense was that the child possibly died from complications as a result of shaken-baby syndrome.